## ISAAC WILSON

*v.*

## JAMES McDOWELL.

1. CONVEYANCE—*whether a security for the payment of money.* Where a deed of trust has been foreclosed by a sale under its provisions, and the fee vested in the *cestui que trust*, a party purchasing from him afterwards can not be considered as having purchased the deed of trust to be held as security for the money expended in such purchase, although he may have made a verbal promise to the grantor that he would purchase the land and convey it to him upon repayment to him of all money expended.

2. Nor can the purchaser, under such circumstances, be treated as the agent of the grantor in the deed of trust, in making such purchase, and as holding the title as a trustee.

3. When a verbal contract is set up to overcome and defeat a deed, loose, indefinite and unsatisfactory evidence will never be sufficient; it must be clear and convincing in its character.

4. STATUTE OF FRAUDS. Land was sold under a deed of trust and conveyed to the purchaser, and by such purchaser conveyed to a third party. Afterwards, the grantor filed a bill against said third party seeking to redeem, alleging that he had, before purchasing, made a verbal agreement with the grantor in the deed of trust, that he would make such purchase and convey the land to the complainant upon certain terms stated in the bill: *Held*, that such an agreement, if made, was within the Statute of Frauds and Perjuries.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. JOHN CLARK, and Mr. D. L. MURDOCK, for the plaintiff in error.

Mr. N. J. PILLSBURY, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed in the Livingston circuit court, by appellant against appellee, to be permitted to redeem certain lands situated in that county. The venue was changed to Will county. The bill alleges that appellant was the owner

of the lands, and being indebted to one Willard in the sum of $1500, he gave to one Pierce a deed of trust, with power to sell the lands, if he should make default, and pay the debt and interest. This deed was executed on the 19th of April, 1860, and default having been made, the lands were sold by the trustee in pursuance of the power in the deed, and Willard became the purchaser; that afterwards, on the 19th day of October, 1861, Willard and wife conveyed the premises to appellee, and he has occupied the greater portion ever since, but appellant has occupied another portion.

Appellant claims that appellee purchased from Willard under an arrangement with him and for his use, and states the agreement in his bill as follows:

"And your orator would further represent unto your honor that, on or about said first day of October, A. D. 1861, defendant, James McDowell, (he being a brother-in-law of your orator,) came to your orator and advised him, your orator, not to contest the said note and trust deed, but to buy up the same on the best terms at which they might be obtained, giving as a reason that a law suit would be expensive and uncertain; to which your orator replied that he, your orator, had no money wherewith to buy the same, and did not know where it could be obtained at that time. Whereupon defendant replied that he, defendant, had money, and that if an arrangement could be made between them, so that defendant could have the use of a part of the said land, he, the defendant, would furnish the money and buy up said incumbrance, and so save orator said land; whereupon your orator and said defendant, James McDowell, made and entered into a contract respecting the premises, in substance as follows: That defendant, on his part, should furnish the money necessary, and go to the city of Chicago and buy said claim or incumbrance, or outstanding title, in whatever form the same might be, and take an assignment or conveyance to himself as security for the money so advanced, and that your orator, on his part, should give to defendant the possession of one

hundred and sixty (160) acres of your orator's said land; and that said defendant, out of the rents and profits of said 160 acres, should pay, first the taxes on all of your orator's said land; second, the interest on the money advanced by said defendant to purchase said claim or incumbrance, and to apply the balance of said rents and profits, if any, to the payment of the money so advanced by defendant to purchase said claim or incumbrance; and it was further agreed by and between your orator and said defendant, that said defendant should receive from your orator such sums of money, and at such times as your orator might be able to pay, as payments on said money so paid out by defendant in paying said claim, and that said defendant shall keep a just and true account of all payments of principal, interest and taxes aforesaid, and of all rents and profits of said 160 acres of land, delivered to the possession of defendant by your orator, and when all said amounts were fully paid and satisfied, that then said defendant should assign, convey and release, by any proper manner, the title of said land to your orator, and deliver back to your orator the possession of said 160 acres, the possession of which was by your orator to be delivered to said defendant."

This agreement is most distinctly and unqualifiedly denied in the answer. Appellee sets up therein that Willard proposed to him to purchase the land, and he deferred doing so until he saw appellant, and learned from him that he had no means with which to redeem or purchase from Willard, and he then proposed to purchase the land and permit appellant to occupy one 80-acre tract with his family, and to rent him more, he paying rent therefor, and that appellant assented to the arrangement; that he thereupon purchased at $2800, which he regarded as its full value at the time, and that appellant occupied under the agreement for a number of years, without setting up any other claim.

Appellant and a number of the members of his family testify to his version of the arrangement, whilst appellee tes-

tifies to his, and is corroborated by the evidence of a number of disinterested witnesses, who swear to admissions made by appellant at various times, giving substantially the same terms as claimed by appellee. It also appears that, after appellant set up the claim to the property, appellee brought a distress for rent, and, on a trial, the issues were found for him, and the relation of landlord and tenant thus was established; that proceeding was commenced in March, 1869, and was determined, on appeal, in the circuit court of Livingston county, at the next October term.

When contracts of this character are set up to overcome and defeat a deed, the evidence must be clear and convincing in its character. Loose, indefinite and unsatisfactory evidence will never be held to suffice. In this case, when the evidence of the witnesses alone is considered, we can not say that it preponderates in favor of complainant. And when we consider the deed of conveyance was made to appellee, and the solemn finding of the circuit court of Livingston county, where the issue was fairly presented for decision, that appellant was the tenant of these lands, holding of appellee, we regard the evidence as preponderating decidedly in favor of the latter. And the evidence all considered, appellant has clearly failed to make out a case requiring the interposition of a court of equity.

But if this had not been so, still the contract was verbal, and is within the Statute of Frauds and Perjuries. Nor has he shown anything to take the case out of its operation. He attempted to prove that he had erected a tenant house on the premises, but in this he failed. It appears that appellee built the house, furnishing the material and employing and paying the workmen. As controlling this case, see *Stephenson* v. *Thompson*, 13 Ill. 186, *Perry* v. *McHenry*, 13 Ill. 233, and other cases decided by this court.

It is urged that appellee but purchased the mortgage or deed of trust, and held it as a security for the money advanced. A complete answer to this is, that there was then no debt due

to Willard from Wilson. Pierce had sold under the trust deed, and Willard had purchased the land and become the owner in fee free from the incumbrance, and when appellee subsequently purchased, he took the title in the same condition. Appellee was, so far as the evidence shows, in no sense the agent of appellant, to purchase the property, nor do we see that he became a trustee of the title.

It is urged that, to apply the Statute of Frauds, would enable appellee to perpetrate a great wrong and injustice on appellant. This might be so, if his theory of the case was the true one, but, on the contrary, appellee seems to have done all he agreed to do. He has fully performed his contract, and appellant has no right to complain. But if he had not, mere hardship, as all know, can not abrogate a positive requirement of the statute. The effect of applying the statute is to enable a party to avoid the performance of such verbal agreements, because they are made in violation of the express terms of the statute. Its application, as a general rule, works hardship, and parties, to avoid its effect, should comply with its terms.

This statute has certainly been relaxed as far as public policy can sanction. In fact, as has been well said by eminent judges, it is doubtful whether it would not have been better to have enforced it according to its letter, without, by judicial construction, making any exceptions.

The decree of the court below must be affirmed.

*Decree affirmed.*