## HENRY B. RANKIN

*v.*

## LEWIS T. RANKIN.

*Opinion filed June 23, 1905.*

1. DEEDS—*proof showing deed to be a mortgage must be clear.* One asserting a deed absolute upon its face to be a mortgage has the burden of proving such assertion by clear, satisfactory and convincing proof.

2. CONTRACTS—*rule as to construction of contract.* If of two constructions to which a contract is open, one requires the performance of the impossible or involves a forfeiture or renders the contract impossible or unjust, while the other makes the performance possible or avoids a forfeiture or is reasonable and just, the latter construction will be adopted.

3. SAME—*contract giving right to re-purchase land construed.* A contract, executed in addition to a one-year lease to the grantor by the grantee, giving the former the right to re-purchase the land during the lease or any renewal thereof, and to apply toward the purchase price any balance from the produce of the farm after payment of the amounts specified as for rent, does not limit the right to purchase to the use of money derived from produce of the farm.

4. TENDER—*one alleging a specific reason for refusing tender waives other grounds.* A defendant in chancery who alleges in his answer his specific ground for refusing the complainant's tender, waives other grounds for refusing the tender which are disclosed by the evidence.

5. INTEREST—*when interest is allowable though tender is made.* When the amount tendered by the complainant is not brought into court and he remains in possession of the land in controversy and receives the use thereof, it is proper, on decreeing him the right to purchase the land, to allow legal interest on the amount found due the defendant.

6. PLEADING—*a general prayer is sufficient to support a decree warranted by the facts alleged.* A general prayer for relief is sufficient to support any decree warranted by the facts alleged in the bill and established by the evidence.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Morgan county; the Hon. O. P. THOMPSON, Judge, presiding.

This was a bill in chancery filed in the circuit court of Morgan county by the appellee, against the appellant, to have a warranty deed bearing date November 13, 1896, executed by the appellee and his brother, William L. Rankin, to Henry B. Rankin, whereby the grantors conveyed to said Henry B. Rankin, in consideration of $46,410, two farms located in Menard county, one containing six hundred and sixty-three acres of prairie land, herein referred to as the "prairie farm," and the other one hundred and sixty-six and one-half acres of timber land, herein referred to as the "timber farm," declared a mortgage with the right of redemption, and for general relief. Answers and replications and a cross-bill having been filed, the cause was referred to a master to take the proofs. Upon the master's report being filed, further proofs were heard in open court, and the court entered a decree finding said deed to be a mortgage and that the appellee was entitled to redeem therefrom. An appeal was perfected to the Appellate Court for the Third District, where the decree of the circuit court was reversed and the cause remanded. Upon the cause being re-instated in the circuit court, by stipulation the testimony taken upon the first trial was introduced in evidence and additional testi-

mony was heard, and the court then held, in accordance with the view expressed by the Appellate Court, that the appellee was entitled to re-purchase the said prairie farm from said Henry B. Rankin under the terms of a contract between the appellee and Henry B. Rankin called "Additional to lease," and entered a decree for the specific performance of said contract of re-purchase, from which decree the defendant again appealed to the Appellate Court for the Third District, where the decree of the circuit court was affirmed, and a further appeal has been prosecuted to this court.

It appears from the pleadings and proofs that the prairie farm had been owned by the family of the appellee for many years; that his father, William L. Rankin, Sr., inherited it from his father, and that in 1890 appellee and his brother, William L. Rankin, Jr., purchased the same from their father, he reserving a room in the dwelling house, and some fruit, etc., during his life, and that appellee and his brother farmed the same until 1896, when they found themselves largely in debt, money difficult to borrow and their real estate heavily encumbered. At that time Henry B. Rankin held a first mortgage on the prairie farm for $15,000, upon which two and one-half years' interest was unpaid, and on the 12th of October, 1896, the appellee went to Jacksonville, the home of Henry B. 'Rankin, they being cousins, and sought to obtain a further loan of $5000 from him, offering to secure the payment thereof upon certain chattel property which he and his brother then had upon the farm. Henry B. Rankin declined to loan them more money, especially upon chattel security, and the appellee returned home. After he had been at home a few days he received word from Henry B. Rankin to come and see him, and during the last days of October, 1896, he again went to Jacksonville. Henry B. Rankin then suggested to him that he might be willing to buy said farms. When appellee was in Jacksonville, early in October, he had made a statement to Henry B. Rankin of the indebtedness of himself and brother, which

then amounted to something like $50,000. Before the appellee went home the second time, Henry B. Rankin asked him to give him an option on the farms until December 25, at $46,410, and had then prepared a writing which gave him such option. The appellee did nothing, but went home, taking the written option with him. On the 7th of November he returned to Jacksonville and again asked Henry B. Rankin to let him have $5000 upon chattel security. This he declined to do, and appellee then stated to Henry B. Rankin he had made up his mind to give him the option upon the farms, and signed a writing whereby Henry B. Rankin was to have the right to buy said farms for $46,410 on or before December 25, 1896, said sum of money to be used, so far as necessary, in paying off the liens against said farms, with the exception of $1500, which was to remain a first lien upon the timber farm. On November 13, 1896, Henry B. Rankin notified the appellee he would take the lands, and on that day the farms were conveyed to him by appellee and his brother. Henry B. Rankin afterwards paid off and satisfied liens upon said farms to the amount of $47,021.50, which was $611.50 more than he had agreed to pay for the farms, which amount was re-paid to him by appellee and his brother by a sale to him of corn, and by cash. On the 30th day of December, 1896, Henry B. Rankin leased the farms to the appellee from March 1, 1897, to March 1, 1898, and on the first day of March, 1897, the appellee and Henry B. Rankin entered into an agreement called "Additional to lease," by which it was provided the appellee was to have the right to re-purchase said lands during the life of said lease, or any renewal that might be made thereof, upon the payment of $46,410, provided he had made all other payments provided to be made by the terms of said "Additional to lease."

The parties have assigned errors and cross-errors, which we will consider in what we deem to be their logical order.

N. W. BRANSON, and JOHN A. BELLATTI, for appellant.

ALBERT SALZENSTEIN, and CHARLES A. BARNES, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

It is first contended by the appellee that the court erred in declining to hold that said deed was a mortgage. Appellee testified that when he was at the home of Henry B. Rankin in the latter part of October, 1896, Henry B. Rankin agreed to loan him $46,410 upon said farms and to accept a deed thereof as security for the payment of that sum, and that the deed was made in pursuance of said arrangement, but that no definite time was fixed when said sum was to be re-paid. This statement was denied by Henry B. Rankin, who testified that he purchased said farms for $46,410 and that said deed was an absolute conveyance. We have examined all the testimony found in the record with care, and find nothing therein which corroborates the statement of the appellee that said transfer was a mortgage and not an absolute deed, while Henry B. Rankin is corroborated in many particulars in his statement that said transfer was an absolute sale, and not a mortgage. The option contract, which was in writing and was signed by the appellee, was not signed by him until he had taken time to consult with his father and brother, and they had full opportunity to examine the writing. It shows the transaction to have been an absolute sale. The deed, which was made in pursuance of the option contract, was absolute in terms, and afterwards the appellee leased, in writing, the farms from Henry B. Rankin and accepted the contract in writing called "Additional to lease," which gave him the right to re-purchase said farms. The record contains a number of letters written by appellee to Henry B. Rankin, and by Rankin to him, with reference to the transaction, and we have discovered nothing in any of these letters which indicates that the parties considered said transaction other than an absolute sale. A part of the indebtedness secured by mortgage upon said farm and which Henry B.

Rankin agreed to take up, was a $4000 loan, the proceeds of which the appellee and his brother claimed should be paid to them and which his father contended should be paid to him. Henry B. Rankin filed a bill of interpleader in the circuit court of Menard county against the appellee, his brother and father, to determine to whom the said sum of $4000 should be paid. The record of that proceeding was introduced in evidence, and the bill, answers and decree, and an agreement between appellee, his father and brother, upon which the decree was largely based, all show that there was an absolute sale of the farms by appellee and his brother to Henry B. Rankin. Henry B. Rankin paid off and discharged mortgage liens upon said prairie farm for a large sum and released the $15,000 mortgage held thereon by himself. When said mortgages were paid the notes were canceled and delivered to appellee, so that said mortgage indebtedness was paid and extinguished.

In this State a deed absolute upon its face may be shown by parol to be a mortgage. The burden of proof, however, is upon the person asserting such fact, and before a deed absolute in form can be declared to be a mortgage, the proof showing that fact must be clear, satisfactory and convincing. (*Sutphen* v. *Cushman,* 35 Ill. 186; *Lindauer* v. *Cummings,* 57 id. 195; *Bentley* v. *O'Bryan,* 111 id. 53; *Burgett* v. *Osborne,* 172 id. 227; *Heaton* v. *Gaines,* 198 id. 479.) We are of the opinion the proof does not satisfactorily show said deed to have been intended as a mortgage, but think it shows it was an absolute conveyance, and therefore are of the opinion the court did not err in declining to hold it to be a mortgage.

The next question which arises upon this record is, did the court err in holding that the appellee had the right to re-purchase said farms under the terms of said "Additional to lease?" That instrument provided that if, from the total products of the leased premises for the year, the appellee could pay all expenses, taxes, his proportion of insurance

and six per cent on the principal sum of $46,410 for the year, such payment to be made on or before December 30, 1897, appellant would accept the same as in full discharge of all rents provided to be paid by the lease. It was also provided: "Should the total produce of the said premises, or income thereof, more than pay all the before enumerated expenses, taxes and insurance, and also the full amount of interest, as above stated, in total amount, then, in this case, the said party of the first part, Henry B. Rankin, hereby agrees to receive the remainder or excess above paying as above indicated, and credit such sum toward payment of the $46,410 as an intended purchase of the farm back by the said party of the second part, viz., Lewis T. Rankin, and the said Henry B. Rankin hereby grants him this privilege."

The lease and "Additional to lease" was continued, by renewals, from year to year, and on December 21, 1901, appellee paid to Henry B. Rankin $410 to apply upon the re-purchase of said prairie farm, (the timber farm having been eliminated from the transaction,) which reduced the amount necessary to re-purchase said farm to $46,000, and on February 24, 1902, the appellee tendered to Henry B. Rankin $46,000 in full payment of the amount due him upon said "Additional to lease" to re-purchase the said prairie farm. Henry B. Rankin refused to accept said sum so tendered him on that day, and he urges that the court erred in decreeing the appellee the right to re-purchase said prairie farm, as it is said the contract, "Additional to lease," expressly confines the fund with which said re-purchase shall be made to the proceeds of the product of said farm, and that the said $46,000 so tendered him was not derived from the product of said farm. The Appellate Court, when the case was there the first time, (111 Ill. App. 403,) disposed of that question quite satisfactorily to us, in the following language (p. 409): "The paper called 'Additional to lease,' which gives the appellee the right to re-purchase the premises, was drawn by appellant, Henry B. Rankin, and if the language used is un-

certain and the intention obscured and open to construction, it should be construed most strongly against him. (*Massie v. Belford,* 68 Ill. 290; *Mueller* v. *Northwestern University,* 195 id. 236.) Where the language of an instrument is susceptible of two constructions, one of which requires the performance of the impossible or involves a forfeiture or renders it unreasonable or unjust, the construction which makes a performance possible or avoids a forfeiture or is reasonable or just will be adopted. (*Hilme* v. *Philadelphia Life Ins. Co.* 61 Pa. St. 107; 100 Am. Dec. 621; *Holmes* v. *Parker,* 125 Ill. 478.) Applying these rules in the construction of the agreement to re-purchase, we think it should be construed as authorizing appellee to pay the purchase price at any time within the year beginning March 1. The right to re-purchase is limited to the year during which appellee is a tenant under the lease, as the 'Additional to lease' is only operative in connection with the lease, and it would be manifestly impossible for appellee, within any one year of his tenancy, to realize out of the 'produce' of the premises any considerable sum of money available as a credit on the purchase price. The privilege granted appellee by this agreement is the re-purchase of the farm, and while under it the appellee has the right to make payments in comparatively small amounts, the privilege to re-purchase is not limited otherwise than by the requirement that he shall 'pay the purchase price within the year of his tenancy. The construction contended for by appellant nullifies this privilege to re-purchase, by making it impossible for appellee to avail himself of it." We are of the opinion the appellee had the right to pay said $46,000 with money other than that derived from the products of said premises.

It is next urged that the tender made to Henry B. Rankin on February 24, 1902, of $46,000 by appellee was not a valid tender, as it is said it was made upon condition that Henry B. Rankin should deed to the appellee, by warranty deed signed by both himself and his wife, said prairie farm.

The testimony is conflicting as to what took place at the time the tender was made, the appellee and his solicitor testifying the tender was unconditional, and that they did not demand a warranty deed signed by Henry B. Rankin and his wife, or any sort of a deed, at the time the tender was made by them, while Henry B. Rankin, his daughter and his solicitor concur in testifying that the solicitor of the appellee, when he offered Henry B. Rankin a certified check for $46,000 on the 24th of February, 1902, demanded of him a warranty deed of the said farm, signed by him and wife. In the bill filed in this case we find the following allegation: "That on that day [February 27, 1901,] he [appellee] told Henry B. Rankin that he expected to pay the balance before March 1, 1902, and shortly thereafter called and told him that the full amount of $46,000 would be tendered him, and asked him to waive tender in specie and be satisfied with the tender of a certified check, to which he acceded, and your orator made arrangement with the Marine Bank of Springfield, and afterwards presented to Henry B. Rankin a certified check for $46,000, which he refused to accept on the ground that your orator had no right to require him to do so, and refused to convey the farm to orator." The answer filed by Henry B. Rankin contains the following allegations upon the same subject: "Defendant further says that the tender made by the complainant, as set out in his bill, was made with money that was not derived from the products of said farm, and therefore the defendant was not bound to receive the same, and that he refused to receive the same for the reason the same was not derived from the products of the farm, and he was not bound by his contract to receive the same as a payment upon the purchase price of said farm."

The rule is fundamental that a defendant in a chancery suit is bound to apprise the complainant, by his answer, of the nature of his defense, and that he cannot avail himself of matters of defense appearing from the evidence but not set up in his answer. (*Dorman* v. *Dorman,* 187 Ill. 154;

*Mehan* v. *Mehan*, 203 id. 180.)   Henry B. Rankin, in his answer, did not raise the question that the tender was conditional, but stated therein that said tender was made with money that was not derived from the products of said farm, and that by reason of that fact the defendant was not bound to receive the same.   We think that by placing his refusal to accept the tender upon the ground stated in his answer he waived the contention which he now makes, that the tender was conditional.   Where a party gives a reason for his conduct,—and especially ought such to be the rule when he pleads such fact in an answer in a chancery case,—he cannot change his ground so as afterwards to put the other party at a disadvantage.   *Gibson* v. *Brown*, 214 Ill. 330.

It is next contended by appellee that the court erred in holding that he should pay Henry B. Rankin interest at five per cent per annum from March 1, 1902, upon the amount found to be due Henry B. Rankin on that day.   The money was not brought into court, and it therefore should be held to draw interest until paid to Henry B. Rankin.   The appellee has received the use of the land and he should pay interest on the purchase price.   *Thayer* v. *Meeker*, 86 Ill. 470; *Aulger* v. *Clay*, 109 id. 487.

The last contention made is, that the bill is not sufficient to support the decree.   The bill contains a general prayer for relief, and it must be regarded sufficient to support any decree warranted by the facts alleged in the bill.   (*Walker* v. *Converse*, 148 Ill. 622.)   The facts surrounding the entire transaction leading up to the execution of said "Additional to lease" are incorporated in the bill, and we think there are sufficient facts averred in the bill and established by the evidence to warrant the decree entered by the court.

Finding no reversible error in this record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*