**Mary Miller, Appellant, v. Louis Mandel, Administrator, et al., Appellees.**

### Gen. No. 17,500.

1. MORTGAGES—*what establishes prima facie case for foreclosure.* Where it is sought to foreclose a deed of trust which is contended to have been given only to secure the payment of an annuity, and

neither the execution of the deed nor its proper transfer to its holder is put in issue by the pleadings, and the execution and transfer is proved and substantially admitted by the grantor, a *prima facie* case for a decree of foreclosure is established.

2. MORTGAGES—*presumed to be what it is.* The presumption is that a mortgage or deed of trust is what it purports to be, security for the note evidencing the indebtedness secured thereby.

3. MORTGAGES—*burden to establish that it is not what it purports to be.* A person asserting that a trust deed and note are only collateral security for the payment of an annuity, and that an instrument in writing was executed which changed and modified the purport of the note and trust deed, has the burden of establishing that claim by proof sufficiently clear, satisfactory and convincing to overcome the presumption arising upon the execution and delivery of the papers.

4. MORTGAGES—*when evidence insufficent to establish that trust deed was not for a debt.* It was attempted to alter and avoid a trust deed and note by proof of a collateral, contemporaneous agreement executed between a parent and children that the deed be given as collateral security for the payment of an annuity to the father. Witnesses testified that a contract was made, but could not state positively that an annuity was mentioned, and there was other testimony by a person who did not see the agreement after it was executed. *Held*, the testimony was too loose, indefinite and unsatisfactory to justify a court of equity in decreeing that the trust deed was given as security for the annuity.

5. MORTGAGES—*when evidence as to conversation is inadmissible in avoiding a trust deed.* In establishing that a trust deed was given merely as security for the payment of an annuity as evidenced by an agreement, a person who was present when the agreement was being drawn may not testify as to a conversation between the alleged annuitant and a justice of the peace who drew the papers.

6. MORTGAGES—*when evidence as to collateral agreement is inadmissible.* In establishing that a trust deed was given merely as security for the payment of an annuity as evidenced by an agreement, a person who advised the making of the agreement, who was not present when it was signed and who did not know that it was in the same condition when signed, cannot testify whether a conversation he had with the alleged annuitant and another was embodied in the agreement.

Foreclosure of trust deed. Appeal from the Circuit Court of Cook county; the HON. LOCKWOOD HONROE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Affirmed. Opinion filed October 22, 1912.

F. J. GRIFFEN, for appellant.

ROSENTHAL & HAMILL, for appellee, Dorothea Klatt; LESSING ROSENTHAL and LEO F. WORMSER, of counsel.

MR. JUSTICE F. A. SMITH delivered the opinion of the court.

This is an appeal from a decree of foreclosure entered in accordance with the prayer of the cross-bill of Dorothea Klatt, defendant and cross-complainant below and one of the appellees here, upon a trust deed securing a $1,700.00 note made by Henry and Augusta Mandel.

The original bill of complaint, filed February 2, 1904, by appellant states that the complainant is the owner of the real estate in question, containing 131 acres more or less, and that she derived title to the land by the will of her former husband, Henry Mandel, which will was duly admitted to probate in the Probate Court of Cook County, Illinois, on September 7, 1909; that the said Henry Mandel went into possession of the land as owner on February 1, 1894, and continued in such possession until the time of his death on March 24, 1900, at which time complainant went into possession thereof as owner and has ever since been in exclusive possession of all the land. The bill avers that Henry Mandel derived title to the land by warranty deed from his father, Christian Mandel, dated February 1, 1894, and duly recorded; that at the time of making the deed, Christian Mandel was in feeble health and undertook to make a distribution and division of all his property among his children, and conveyed the land in question to Henry Mandel, his son. At the same time he conveyed his other lands to his other sons. At the time of the conveyance of the land to Henry Mandel for the purpose of making said distribution of the property of said Christian Mandel among his children, Henry Mandel and his

wife made their promissory note for $4,500.00, due August 12, 1899, bearing interest at four per cent. per annum, and to secure the same, said Henry Mandel and his wife made a trust deed to Frederick Mandel, Sr., which note and trust deed were delivered to Theodore Mandel, a son of Christian Mandel, as his share of the property of his father, and Christian Mandel made a full distribution of his property among his children, giving each what said Christian Mandel deemed to be an equal share thereof, and the children who received real estate as and for their share of the estate, namely, Henry Mandel, Louis Mandel, August Mandel and Christian Mandel, Jr., made, in consideration of the conveyance of land to them, an agreement with said Christian Mandel whereby each agreed to pay said Christian Mandel $100.00 per year during his life, and to secure the said payments, the said Henry, Louis, August and Christian, each executed and delivered to Christian Mandel their promissory note, dated February 1, 1894, for $1,700.00 purporting to bear interest at the rate of six per cent. and secured by trust deeds to Frederick Mandel, Sr., to the lands respectively conveyed to them; that the notes and trust deeds were made solely and only as security for the payment of said annuity of $100.00 to Christian Mandel during his life.

The bill avers that Christian Mandel died June 9, 1900, and that Henry Mandel paid to said Christian Mandel $100.00 per year during his life with the possible exception of the year 1900, the year in which both said Christian and Henry Mandel died; that said annuity was paid for the year 1899 by board and care, and the annual payments for the previous years were by Christian Mandel endorsed on said note for $1,700.00, as appears by a copy attached as "Exhibit C" to the bill and made a part thereof. The bill tenders and brings into court $200.00 for any unpaid part of annuity found by the court. The bill prays that an account may be taken and that the trust deed

to Frederick Mandel, Sr., may be declared a cloud on complainant's land and removed. The bill makes Louis Mandel administrator of the estate of Christian Mandel, deceased, Louis Mandel and August Mandel executors under the last will and testament of Theodore Mandel, deceased, Louis Mandel, August Mandel, Dorothea Klatt, Fred Mandel, Sr., trustee, and William Schultz, successor in trust, parties defendant. Louis Mandel individually and as administrator, Dorothea Klatt and Fred Mandel, Sr., trustee, filed a joint and several answer to the bill, admitting many facts stated in the bill as to the execution of the papers set forth therein, and denying the payment of the annuity of $100.00 per year during the life of Christian Mandel as averred in the bill. The answer admits that the trustee has refused to release the trust deed for $1,700.00, unless $1,700.00 and interest thereon is fully paid; and that the administrator demands payment in full of the $1,700.00 note and interest thereon.

Defendant, appellee Dorothea Klatt, on September 14, 1904, filed her cross-bill in the usual form for foreclosure of the $1,700.00 note and the trust deed. To the cross-bill, complainant answered, and the chief and only defense set up in the answer is the alleged agreement set up in her original bill of complaint, that the note and mortgage were given Christian Mandel, Sr., as security only for the payment by Henry Mandel to him of an annuity of $100.00 per year during his life.

By an amendment to the original bill, the allegations are changed so as to read that the note and trust deed were given as security for the payment of $100.00 annuity only for ten years and not during the entire life of Christian Mandel, and that the arrangement was embodied in a contemporaneous written contract executed by Christian Mandel, Sr., and his children.

The cause was put at issue and on the trial the court entered a decree dismissing the complainant's bill and

decreeing a foreclosure of the $1,700.00 note and trust deed in favor of the cross-complainant, the chancellor finding that the material allegations of the bill were not supported and sustained by the evidence and proof, and that the $1,700.00 trust deed were given to secure indebtedness which had not been paid.

Neither the execution of the $1,700.00 note and trust deed by Henry and Augusta Mandel and their delivery to Christian Mandel, Sr., or the proper transfer thereof to Dorothea Klatt, the holder of the note at the time of the filing of her cross-bill, were put in issue by the pleadings. These facts were proven and substantially admitted in the evidence offered on behalf of appellant. This established a *prima facie* case for a decree of foreclosure upon the note and trust deed. Boudinot v. Winter, 190 Ill. 394.

The presumption is that a mortgage or trust deed is what it purports to be,—security for the note evidencing the indebtedness secured thereby. The original bill of complaint asserts that the trust deed and note are not what they purport to be, but are collateral security only for the payment of an annuity of $100.00 a year to Christian Mandel, Sr., for ten years, and that an instrument in writing was executed which changed and modified the purport of the note and trust deed. Upon this issue, the burden of establishing that claim by proof sufficiently clear, satisfactory and convincing to overcome the presumption arising upon the execution and delivery of the papers, was upon the complainant, appellant. When one claims that a deed, purporting upon its face to be an absolute conveyance, was intended only as a mortgage, or when one seeks to prevent the collection of a promissory note on the ground that the note, despite its provisions, was made and given only as collateral security, this rule of law is applicable. Courts will not lightly unmake or disturb the effect of a written document. They require proof that is convincing to justify interposition. In Eames v. Hardin, 111 Ill. 634, it was

said: "It is never done on vague and inconclusive evidence. It may be proved by verbal testimony, but it must be entirely satisfactory, if not conclusive."

The attempt in the original bill of complainant and by answer to the cross-bill is to alter and avoid the effect of the $1,700.00 note and mortgage by proof of a collateral agreement executed between the father and the children at the time the $1,700.00 note and mortgage were executed and delivered. Whether the claim be, as here, that a note and trust deed was in fact not intended as such, or that a deed was in fact not intended as an absolute conveyance, but only as a mortgage, or that a note was in fact not intended to evidence the debt it recites, but was only collateral security to secure some other debt or obligation, the rule of law as to the burden of proof is in all cases the same. In Rankin v. Rankin, 216 Ill. 132, the bill sought to have a warranty deed declared a mortgage with the right of redemption. The court said:

"The burden of proof, however, is upon the person asserting such fact, and before a deed absolute in form can be declared to be a mortgage, the proof showing that fact must be clear, satisfactory and convincing. Sutphen v. Cushman, 35 Ill. 186; Lindauer v. Cummings, 57 Ill. 195; Bentley v. O'Bryan, 111 Ill. 53; Burgett v. Osborne, 172 Ill. 227; Heaton v. Gaines, 198 Ill. 479."

The same rule was announced in Gannon v. Moles, 209 Ill. 180; and in Bentley v. O'Bryan, 111 Ill. 53, the court said: "Loose, indefinite and unsatisfactory evidence will never suffice." In Wilson v. McDowell, 78 Ill. 514, the appellant was seeking to redeem certain lands claiming that the appellee had purchased the title only to hold the same as security for the money expended by appellee for such purchase. The agreement was denied by appellee. The court in affirming the decree and dismissing the bill said at page 517:

"When contracts of this character are set up to overcome and defeat a deed, the evidence must be clear and convincing in its character."

Many other decisions of our court to the same effect might be cited, and we think there are none to the contrary.

The burden assumed by appellant in her appeal is twofold. She must not only overcome by satisfactory evidence the presumption that the note and trust deed, executed by Henry and Augusta Mandel, was evidence of an original indebtedness, but she was compelled to establish this by adequate parol proof of the contents of the lost collateral agreement upon which she relied.

What then does the complainant's evidence show? Her main reliance is upon the testimony of Mr. Kemman as to the lost agreement and its contents. Mr. Kemman's testimony is in substance that he is a farmer at La Grange, Illinois, and knew Christian Mandel, Sr., in his lifetime, and knew his sons and daughters; that he was a justice of the peace in 1894, and that about February 1st, he was consulted by Christian Mandel and prepared the papers referred to in the pleadings, including the lost contract in question. He says that the contract stated that each of the four sons was to have a farm and Henry Mandel 130 acres in Cook County, and Louis Mandel 130 acres in Cook County, and Theodore and August each 80 acres in DuPage County; that Louis Mandel was to give a trust deed back for $4,500.00 to his uncle to secure that amount to Theodore, and Henry Mandel the same; he was to give a trust deed for $4,500.00 for security to Christian Mandel and also a trust deed for $1,700.00 to Fred Mandel to secure payment of $100.00 each year to old Mr. Mandel, payable for ten years, and that Mrs. Klatt was to have her notes made before that time, in possession of Christian Mandel, Sr., returned to her; that the $1,700.00 note and trust deed was to secure $100.00 to the old man each year; that the con-

tract was for the purpose of making a division of the entire estate, although he would not state that there were words in the contract to that effect. He further states, "I don't know anything more than just what the note and trust deed states." On cross-examination he testified:

"Q. Now did that agreement say anything about surrendering or cancelling or discharging of the $1,700.00 notes and trust deeds? A. I don't think it said anything further than it was to run for ten years.

"Q. That is all it said? A. Yes.

"Q. Now is your recollection absolutely clear as to whether that agreement stated that it was to pay that note,—these notes—$100.00 a year was to be paid to Christian Mandel, or that it read that the interest on these notes was to be paid to Christian Mandel? A. I would not state, I could not state that hardly.

"Q. It is not absolutely clear? A. No, sir.

"Q. You are absolutely clear on the point that the contract said nothing about the surrender of this note and trust deed at any time? A. Well, I am pretty sure that it did not state anything about a surrender at any time,—it was just left open, that is all."

He further said: "I don't think the word 'annuity' was in it at all."

Mr. Holmes was called as a witness by the complainant, and testified that he advised the drawing of the agreement; that Christian Mandel consulted him in regard to it, and that his memory is more definite as to what he advised than about the division of the estate. He testified that he did not see the agreement after it was executed. This is substantially all of the evidence offered by complainant in support of her bill, and in defense to the cross-bill.

The deposition of W. J. Springer was read on behalf of the defense. He testified that in the early part of 1894 Dorothea Klatt and her husband came to his office with an agreement between Christian Mandel,

Miller v. Mandel, 174 Ill. App. 166.

Sr., and his children, and he examined the paper and remembers its general import. He testifies that it was a settlement between Dorothea Klatt's father and his children in relation to some land. Some of the children gave him notes secured on the land, but he could not remember the amount of the notes and when due. Some fixed amount was to be paid to the father by certain of the children; that he is unable to remember which ones, and these amounts were secured either by trust deed or mortgage on land. The notes were like ordinary notes given and secured by trust deed. They were payable at a certain time, drawing a certain rate of interest. He says, "I don't think there was any provision for the payment by the children to Christian Mandel of an annuity."

In our opinion the testimony as to the contents and provisions of the agreement is too loose, indefinite and unsatisfactory to justify a court of equity in decreeing that the note in question and trust deed securing it, were given as collateral security simply to secure the payment of an annuity to Christian Mandel, Sr., for ten years; and we think the court properly found that the evidence failed to support the material allegations of the original bill of complaint.

The evidence in regard to the inventory and accounts in the Probate Court does not, in our opinion, furnish any proof of a common understanding between the heirs and the administrator of Christian Mandel that there was any such agreement or that the securities held by Christian Mandel, Sr., were subject to the provisons of the alleged collateral agreement.

It is urged that the court erred in refusing to receive the evidence of Thomas J. Holmes as to the statement of Christian Mandel to him at the time that Holmes advised the making of the agreement as to what he was going to do. The question ruled out by the court was the following:

"Q. You may state what they told you they were going to do,—Mr. Mandel and Mr. Kemman."

176     APPELLATE COURTS OF ILLINOIS.

Jirmalowicz v. Grand Trunk Western Ry. Co., 174 Ill. App. 176.

We think the ruling of the court was proper. The following question was then asked the witness:

"Q. Now assume that you prepared this document that has been testified to, you may state whether or not the conversation which you had with Christian Mandel and Mr. Kemman was embodied,—the agreement and talk there were embodied in this agreement."

The court sustained an objection to this question, the witness having testified that he was not present when the agreement was signed, and was unable to say whether the agreement in question was in the same condition when it was signed. We think the ruling of the court in sustaining the objections to the above questions was clearly right. The evidence sought to be introduced in response to the question would not prove or tend to prove the contents of the agreement when it was signed.

In our opinion the decree of the court is supported by the evidence, and is affirmed.

*Affirmed.*