**Albert E. Swinson, Appellee, v. Sylvia Sodaman, Appellant.**

**Gen. No. 9,408.**

Opinion filed April 20, 1939.

C. A. PEDDERSON, of Rockford, for appellant.

CHARLES S. THOMAS, of Rockford, for appellee.

MR. JUSTICE HUFFMAN delivered the opinion of the court.

This case comes to this court by transfer from the Supreme Court. It is a suit by appellee to compel appellant to convey to him certain premises pursuant to an alleged oral agreement, claimed to have been made in connection with a conveyance of said premises by appellee to appellant, in payment and satisfaction of a debt secured by mortgage thereon. The principal amount of the mortgage indebtedness was $3,000, evidenced by a note for that amount dated November 2, 1931, and secured by a trust deed. Appellant became holder of the note in due course. The debt became due. Appellant had been compelled to pay delinquent taxes on the land. Under date of November 11, 1936, ap-

pellee and his wife executed to appellant a deed to the premises in full satisfaction of the mortgage debt, which deed is as follows:

THIS INDENTURE WITNESSETH: That the Grantors Albert E. Swinson and his wife, Eunice M. Swinson, of the Town of Laona, in the County of Winnebago and State of Illinois, for and in consideration of the sum of One Dollar and other good and valuable considerations, in hand paid, CONVEY and WARRANT to Sylvia Sodaman, of the City of Belvidere, County of Boone and State of Illinois, the following described Real Estate, to-wit:

"The East Thirty (30) acres of the North East Fractional Quarter (¼) of Section Nineteen (19) in Township Twenty-Nine North, Range Ten (10) East of the Fourth (4) Principal Meridian.

"Also the North East Quarter (¼) of the South East Quarter (¼) of Section Nineteen (19) in Township and Range aforesaid; excepting therefrom the premises conveyed by A. E. Swinson et al to Frank H. Adleman by deed recorded in Book 216 of Deeds, page 201 in the Recorder's Office of Winnebago County, Illinois. Containing Seventy (70) acres, more or less.

"This Deed, is made voluntarily and under no compulsion or constraint, is an absolute conveyance of title in effect as well as form and is not intended as a mortgage, trust conveyance, or security of any kind. The consideration, therefor, is full release of all debts, notes, obligations, costs and charges heretofore subsisting on account and by the terms of that certain Trust Deed heretofore existing on the property herein conveyed, executed by the grantors herein to Everette G. Patterson as Trustee, and recorded in Book 372 of Mortgages, Page 49 of the Records of Winnebago County, aforesaid. This conveyance completely satisfying said obligation and terminating said trust deed and notes secured thereby, and any effect thereof in all

respects. And by the execution and delivery of this deed, the grantors herein acknowledge the sufficiency and adequacy of the consideration set out.

"Situated in the Town of Laona, in the County of Winnebago, in the State of Illinois, hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of this State.

"Dated this 11th day of November A. D. 1936.

Albert E. Swinson (Seal)<br>Eunice M. Swinson (Seal)"

On December 3, 1937, appellee brought this suit to compel appellant to reconvey to him the premises for the sum of $3,000 and the delinquent taxes that appellant had paid, pursuant to an oral agreement so to do which appellee alleges appellant made. Appellant by answer denies making any such agreement or giving to appellee any option to repurchase the premises in question.

The court found in favor of appellee and that appellant had agreed with appellee to reconvey to him the land, as claimed, upon payment of the principal debt of $3,000 and back taxes; that appellee had made due tender thereof within the period fixed; and ordered that such conveyance be made by appellant, and that upon her failure to do so, the master in chancery make such conveyance. The appellant has prosecuted this appeal from the above decree.

Appellee was 73 years of age at the time of the hearing. He had lived in the village of Durand for many years and had not actively engaged in farming since 1912. He states that he had not farmed the land in question for three or four years prior to the conveyance thereof to appellant. With respect to this farm he says, "We couldn't seem to make enough on the farm to pay interest and taxes." He further states that it was because of this fact the farm was deeded to appellant. He alleges that appellant made an oral

agreement with him that if he and his wife would execute and deliver to her a warranty deed to the premises, she would at the same time deliver to him a written option to repurchase the same upon the payment of $3,000 and back taxes which she had paid; and that this option to repurchase was to provide that such right to purchase should continue to March 2, 1938. The complaint alleges that this agreement was entered into on or about February 19, 1937. The complaint further alleges that the deed in question from appellee to appellant was executed and delivered on January 27, 1937. It will be noted that the deed is executed under date of November 11, 1936. It is further alleged that following the conveyance of the premises from appellee to appellant, she leased him the land for farming purposes for the cash rental of $30 per month. It is further alleged that prior to March 2, 1938, and on October 1, 1937, appellee made tender to appellant of a sufficient sum of money to repay to her the principal debt of $3,000 and the taxes on the farm which she had paid, pursuant to the alleged repurchase agreement; and that appellant refused to reconvey the premises.

It will be observed that the complaint alleged the date of the conveyance of the premises from appellee to appellant, by delivery of the deed, to be January 27, 1937, and the date of the repurchase agreement to be February 19, 1937. No repurchase agreement was ever reduced to writing and appellee seeks now to enforce the same as a parol agreement. Appellee in his testimony states that he had several conversations with appellant during the summer of 1936, about the payment of the indebtedness then due and the taxes which she had paid. He claims she stated at such times that she would be willing to take the principal amount of the debt, $3,000, and the back taxes. He says that he told her, "I will try and do that." The result was that appellee did not raise the money and did not carry out such proposal. He says he went to Beloit to see

if he could secure a loan, but obtained no results, and that he made other attempts to secure a loan. He states there were certain judgments standing against him to which appellant objected, and that she consulted an attorney for the purpose of bringing a foreclosure against this land. He says that he did not want a foreclosure brought against him; that he met these parties and worked out a plan whereby such proceedings were avoided. It was at this attorney's office he signed the deed in question. He states his understanding was that when he delivered the deed to appellant, the entire debt was released and discharged. He had not paid the taxes on the land for several years, and he had not farmed the land for three or four years. He had done no farming himself since 1912. He says he couldn't make enough on this farm to pay the interest and taxes, and that it was because of this fact he deeded the same to appellant. He says he talked with her several times about the matter, both before and after the deed was given. He says that when she offered to cancel the debt if he would pay her her original investment of $3,000 and taxes, that he told her he would do so as soon as he could get the money. He says that at the time the deed was given, he does not recollect as to how long he was to have to get the farm back. He states he was to have a reasonable length of time and that he thinks it was something like a year. He says he tried to get the money and couldn't. He further says that none of the conversations had between him and appellant, and upon which he bases this suit, were reduced to writing. He admits that when the year expired, he did not pay her the money, and states his reason to be that he never had the money with which to pay her.

Appellee's son testified regarding the alleged conversations between appellee and appellant. He says he was present at some of them where he heard appellant agree to reconvey the premises to appellee if he could raise $3,000 and back taxes, by March 1, 1938.

The witness states he heard such conversation in the fall of 1936, at the time when the discussions were being had regarding the judgments then standing against appellee and to which appellant was objecting and threatening to bring foreclosure. These judgments were small in amount and the son took care of them from his corn crop. It appears that about October 1, 1937, the son had secured a purchaser who was willing to pay an amount of money for the farm which would enable appellee to pay to appellant the sum of $3,000 and back taxes, and it was at this time that she was approached with such proposition and with an alleged tender of that amount. The son states that he did not know how much cash this prospective purchaser had, but that it was a large roll of bills and that he carried it in his pants pocket; that he did not take the money out of his pocket at appellant's home at the time of the alleged tender, nor did he make tender of any sum of money. The son corroborates appellee to the effect that appellant in the spring of 1937, offered to convey the farm back if they would pay her the $3,000 and the taxes, which she had invested therein. Appellee and his son were the only witnesses regarding the conversations and transactions had between the parties.

The complaint is predicated on the theory that the transaction was an absolute conveyance of the premises with the right to repurchase. The court so found and held that appellee was entitled to such conveyance upon the payment of $3,000 and back taxes. The decree further finds that the deed was intended as a mortgage and given as additional security. This, however, cannot be the basis for the relief granted, as under such conditions a party seeking to redeem must pay the principal debt, interest and taxes paid by the holder, and the interest thereon. *Bremer v. Calumet & C. Canal & Dock Co.*, 127 Ill. 464. Furthermore, the evidence fails to disclose any claim that the deed in ques-

tion was given as a mortgage, and an option to recon-
vey will not convert a conveyance absolute on its face
into a mortgage. *Longfellow v. Moore,* 102 Ill. 289,
297; *Rue v. Dole,* 107 Ill. 275, 282; *Caraway v. Sly,* 222
Ill. 203, 205; *Kimmel v. Bundy,* 302 Ill. 514, 516, 517.

As above stated, the complaint is not framed to have
the deed declared a mortgage or to be permitted to re-
deem from it, but it is to have the alleged contract for
purchase specifically executed. The deed by its terms
canceled the mortgage indebtedness, the premises were
conveyed by appellee to appellant, and rented by him
from appellant at the sum of $30 per month. Appellee
in taking such lease, occupied the premises as appel-
lant's tenant. As stated in *Longfellow v. Moore, supra,*
at p. 297, with respect to similar circumstances, "If
this was not a satisfaction and termination of the mort-
gage, it is impossible to conceive what would have that
effect." It is further said on the same page, "nor did
the agreement to give appellant the option to purchase
within a specified time, and upon specific terms, revive
it as a mortgage. Is it possible to suppose, after the
satisfaction of the mortgage, appellee could have, at
any time, foreclosed as on a mortgage? Surely not.
And if not a mortgage in appellee's favor, it surely
could not be in appellant's favor. If a mortgage, it
must be mutually so as to both parties." The right to
redeem and the right to foreclose are reciprocal. *Cara-
way v. Sly, supra,* p. 206.

We are of the opinion there is no question but that
the deed was an absolute conveyance. The appellee
has recognized this to be so by the character of the
complaint filed. It does not appear here that the deed
and the defeasance were parts of the same transac-
tion. Appellee states that the deed was mailed to him
by the attorney who drew it. As previously stated
in substance, if the relation of debtor and creditor
continues to exist after the conveyance, and the debt

still subsists as to the consideration of the conveyance, the transaction will be treated as a mortgage. The test is whether the debt continued or was extinguished. In this case we think it fully appears that the debt was extinguished. The conveyance in this case having extinguished the debt, the relation of debtor and creditor no longer existed, and there was no debt to support a mortgage. Therefore that part of the decree finding that the deed was intended as a mortgage and given as additional security, was erroneous. It is urged by appellee that a deed absolute on its face will be construed as a mortgage if the evidence of the debt is not surrendered up and canceled. It appears in this case that appellant did not return to appellee the mortgage and note involved. This question was before the Supreme Court in the case of *Kimmel v. Bundy, supra,* where at p. 517 the court states that it was contended by the appellant that the appellee in retaining possession of the notes and mortgage, which he held when the deed was made, was a circumstance showing that the debt was not satisfied by the conveyance. The notes and mortgage in that case were not delivered to the appellant but were retained by the appellee. The Supreme Court was not in accord with this contention of the appellant.

We now come to a consideration of the question of whether the alleged agreement to repurchase was sufficiently proven. There may be many times when a creditor would be willing to settle a debt by accepting less than the full amount due, but when such statements are made to a debtor and he replies that he is unable to comply with such offer due to the fact he doesn't have the money, but will see if he can find it, does not mean that such debtor can in law enforce such proposal at some future time or date which was not in the minds of the parties at the time of such statement. The deed and the defeasance should be part of the

same transaction, for a subsequent defeasance without a new consideration to support it, is a mere *nudum pactum,* and no rights can arise under it. The evidence in this case is most indefinite and uncertain as to any specific time appellant ever made such a proposal as claimed, or within what time the same should be executed. Appellee relies upon a verbal agreement to establish his right to purchase the premises, and as grantor is now claiming the privilege of paying to appellant within a given time, a certain sum of money, which he claims thereby entitles him to a reconveyance. Under such a state of facts, the equity of redemption does not continue, and it becomes necessary for the plaintiff in such a suit to establish his right to repurchase by clear and convincing proof. It may well be that a person buys land in satisfaction of a precedent debt. Evidence of an oral option to repurchase following such a transaction should be so clear as to leave no question of the intention and agreement of the parties, and be so inconsistent with any other theory as to leave no substantial doubt.

Courts of equity will generally seek to avoid the harshness of forfeiture. However, the evidence should be sufficient and satisfactory, or sufficient circumstances should appear in evidence to warrant the court in resolving such doubts in favor of the party seeking the benefit of the rule. But here, we find that the deed was executed in an attorney's office under date of November 11, 1936; that appellee by his complaint alleges delivery of the deed to appellant on January 27, 1937; that he alleges the agreement to repurchase was entered into on February 19, 1937, and was to extend to March 2, 1938. The evidence fails to sustain this position of appellee. The most that can be said is that it appears from his testimony he had conversations with appellant, the dates of which he cannot fix, some of which were long before the delivery of the deed, at

times when appellant was seeking payment of her note, and at which times he says he told her he did not have the money but that if he could get it, he would pay her. The record fails to support the decree. The decree is reversed and remanded.

*Reversed and remanded.*