## JONES et al. v. PROVIDENT MUT. LIFE INS. CO. OF PHILADELPHIA et al.
### No. 6936.

Circuit Court of Appeals, Seventh Circuit.
Jan. 17, 1940.

Rehearing Denied March 2, 1940.

Michael F. Mulcahy, of Chicago, Ill., Ashley Greene, of Portland, Or., and Henry W. Dieringer, of Chicago, Ill., for appellants.

James A. Meeks and Louis A. Lowenstein, both of Danville, Ill., and Riley McClain, of Paris, Ill., for appellees.

Before EVANS, MAJOR, and TREANOR, Circuit Judges.

TREANOR, Circuit Judge.

Plaintiff-appellants, Jones and Straube, as trustees, prosecute this appeal from a decree dismissing their bill for want of equity in an action by which they sought to establish their title, or their right to obtain title, to certain land.

The plaintiffs held title to the real estate in question as trustees of a trust created by the will of William Straube, deceased, who had died on the 22nd day of October, 1928. Provident Life Insurance Co. was the owner of a note secured by a mortgage, the original principal of which was $12,000, and which had been executed by William Straube in 1913.

In July, 1934, there was owing a balance of $8,000 of the principal debt and $660 interest, the latter covering a period of eighteen months. The plaintiffs, both as trustees and executors, were without funds to apply on either principal or interest and were notified by the mortgagee-creditor that no further extension of time could be granted. Thereafter the plaintiffs, as trustees and executors, opened negotiations with the mortgagee for an arrangement by which the plaintiffs, in their representative capacities, would convey the equity of redemption owned by the trust in the real estate to the mortgagee in lieu of and at a less cost than would be incurred by the mortgagee in a foreclosure suit.

The negotiations resulted in an agreement which, in our opinion, the District Court correctly stated to be as follows: "The terms of the contract so set out were that plaintiffs, as executors and trustees would accept the sum of five hundred dollars to be paid by the mortgagee and in

consideration therefor would cause to be executed and delivered good and sufficient conveyances of all of the right, title and interest of their trust and of the beneficiaries thereof to the real estate hereinbefore described to the mortgagee in lieu of foreclosure of said mortgage and in satisfaction of the indebtedness thereby secured so that the mortgagee would have the fee simple title thereto."

In compliance with the agreement Jones and Straube, in their representative capacities, executed their quitclaim deed to the mortgagee and received the sum of $500 from the mortgagee. A second quitclaim deed was executed by Straube and his wife and by the widow of William Straube. Both deeds were recorded on the 24th day of July, 1934.

The District Court found that the total beneficial consideration passing from the mortgagee to the plaintiffs in their representative capacities by virtue of their conveyance was $14,220.45, consisting of the $500 in cash, taxes and special assessments assumed by the mortgage in the sum of $4,962.65, the balance of principal and accrued interest amounting to $8,660, and the sum of $97.80, representing the cost of consummating the contract. The court also found that the value of the farm at the time of the making and consummation of the contract did not exceed ten thousand (10,000) dollars and that "the consideration passing from the Provident Mutual Life Insurance Co. to the plaintiffs by virtue of the consummation of the contract * * * was full, fair and adequate and in excess of the fair cash market value of the real estate in question at the date of the consummation of the contract."

From about August 6, 1934, the Provident Mutual Insurance Co. assumed full control and management of the land, as an apparent owner, and plaintiffs did not question the right of the Insurance Company until shortly before February 9, 1938, upon which date plaintiffs in their representative capacities served notice of rescission of the contract.

The evidence amply supported the District Court's finding of the following facts:

(1) It was the intention of the plaintiffs, in their representative capacities, and the Insurance Company at the time of entering into and consummating the contract that the conveyance of real estate should be absolute.

(2) The Insurance Company at all times acted in good faith "with no intent to defraud or deprive plaintiffs of any of the fruits of their bargain or any of their rights whatsoever."

(3) The Insurance Company made no effort to enforce collection of the primary indebtedness after receiving the quitclaim deeds and the intention of the parties was that such indebtedness and all liability of the plaintiffs arising under said indebtedness of the mortgage securing the same should be cancelled and discharged from and after the receipt of said quitclaim deeds.

The conduct of grantors and grantee between the dates of the execution of the deeds and of the notice of rescission indicated an understanding that the grantee had acquired the complete ownership of the land. The grantee took over complete control and management of the farm and entered into lease contracts with different lessees and paid all taxes and special assessments, and made improvements at considerable expense. The grantors did not claim any ownership interest in the land in question, and did not tender any payments of interest or principal. The grantee made no further demands on the grantors respecting the obligations of the note and mortgage, although the grantee retained possession of the note and mortgage until shortly before the attempted rescission by plaintiffs. The note bears the notation "cancelled Aug. 6, '34" and, although plaintiffs question whether the notation was made on that date, there is no evidence to the contrary. The quitclaim deeds were filed for record on the 24th day of July, 1934, and on August 23, 1934, the property was transferred on the books of defendant grantee from the mortgage to the real estate account. There is no evidence that the retention of the cancelled note and the mortgage by the defendant was for the purpose of qualifying the apparent intentions of the parties. The defendant offered the very reasonable explanation that they were retained for four months as a safeguard against the possibility that one or more of the grantors might go into bankruptcy within four months of the transfer of the property, and that the continued retention was due to an oversight.

In view of the conduct and understanding of the parties the conveyance must stand unless there is merit in plaintiffs' contention that they have the right to rescind the contract on the grounds of inadequate consideration and of nonperformance by

the defendant resulting from defendant's failure to return the cancelled note to the plaintiffs and formally to release the mortgage.

The defendant company paid the plaintiffs $500 in cash, accepted the deeds of conveyance in satisfaction of the principal debt and interest thereon, amounting to $8,660, and assumed and paid several thousand dollars in taxes and special assessments, the total amounting to $14,122.65, a sum greatly in excess of the estimated value of the land at the time of the conveyance. We are of the opinion that there was no defect, either in the contract or in defendant's performance thereof, by reason of inadequacy of consideration.

We are unable to accept plaintiffs' contention that defendant's long delay in returning the cancelled note and releasing the mortgage amounted to a nonperformance of its contractual obligations. It is clear that plaintiffs were entitled to a surrender of the principal note and to a release of the mortgage of record; but it is inaccurate to say that the terms of the contract provided for such action on the part of the defendant. The evidence is sufficient to support the inference drawn by the District Court that the conveyance of the real estate was intended by both parties to be in full satisfaction of the indebtedness which was secured by the mortgage and evidenced by the note. Any right which the plaintiffs had to the return of the note and to a release of the mortgage was founded upon the discharge of the original contract of indebtedness and did not rest upon any terms of the contract. Such a right is created by operation of law for the benefit of the debtor who has discharged his debt. The conveyance and the acceptance of the deed in full satisfaction by the defendant discharged the debt and the security therefor, and any claim of the defendant against the plaintiffs in respect to the debt or the security was completely barred. At any time during the period of 3½ years the plaintiffs, by proceedings in equity, could have compelled the defendant to cancel and return the note and release the mortgage. Such relief is available in equity for the protection of the debtor who has discharged his debt, but is not available to a debtor for the purpose of avoiding contracts which have been carried out fully and in good faith.[1] Also, under the decisions of Illinois, a deed absolute on its face will not be treated as additional security simply because the mortgagee-grantee has "retained possession of the notes and mortgage."[2] "One claiming a deed absolute in form is a mortgage must establish it by clear and convincing proof."[3]

Both parties discuss the effect of certain action of the Probate Court of DuPage County, Illinois, the court in which the last will and testament of William Straube had been admitted to probate and in which the administration of his estate was pending. It appears from the record that the plaintiff-trustees, who were also the executors of the last will and testament of William Straube, came to the conclusion, during the negotiations for the transfer of the land, that they should obtain "a court order for the deed;" and a letter from the trustees to the defendant company contained a statement that the trustees "had expected to secure a court order for the deed." The answering communication from the defendant company expressed the desire to have "an understanding with you (plaintiffs) as to the amount you will accept (subject to the approval of the Probate Court, if court proceedings are necessary) for the conveyance." The plaintiffs petitioned the Probate Court for leave to make the conveyance and the petition was granted by order of the court dated July 5, 1934. The quitclaim deeds were executed under date of July 6, 1934, and subsequently the deeds and a copy of the order of the Probate Court were forwarded to the defendant company.

The order recited that the trustees were given leave to execute, acknowledge and deliver their quitclaim deed conveying all their right, title and interest to the Provident Mutual Life Ins. Co. in the real estate in question "in consideration of the payment to said Howard P. Jones and Alfred H. Straube, as Executors and Trustees, of the sum of Five Hundred No./100 ($500.00) Dollars in cash, and also in consideration of the surrender to the said Executors and Trustees of the principal

---

[1] Miller v. Green, 37 Ill.App. 631, affirmed in 138 Ill. 565, 28 N.E. 837.

[2] Kimmel v. Bundy, 302 Ill. 514, 135 N.E. 56, 57; Swinson v. Sodaman, 300 Ill. App. 31, 20 N.E.2d 623.

[3] Williams v. Williams, 180 Ill. 361, 54 N.E. 229; Rankin v. Rankin, 216 Ill. 132, 74 N.E. 763.

promissory note of Eight Thousand and No/100 ($8000.00) Dollars, executed by William Straube and Jessie Straube, his wife, and the cancellation of all interest coupon notes evidencing all the interest that has accrued under the terms of said principal promissory note, and deliver unto said Executors and Trustees duly cancelled the said principal promissory note and said interest coupons and release the Trust Deed securing the payment thereof."

The plaintiffs contend that the foregoing recital in the court's order became a part of the contract between plaintiffs and defendant and that defendant's failure to surrender the note and cancel interest coupons and to release the trust deed securing the mortgage indebtedness amounted to a failure of consideration and of performance.

Both parties agree that the Probate Court of DuPage County has no jurisdiction over trusts and was without power to either approve or disapprove the contract and to grant leave to the plaintiffs to convey the property. The plaintiffs, however, insist that even if the order was a nullity the provisions thereof became a part of the contract by agreement of the parties. But we find nothing in the record which indicates that the parties intended to include the provisions of the order in their agreement. There is no evidence that either party anticipated the contents of the order, and it is clear from the evidence that defendant did not receive a copy of the order until after the execution of the quitclaim deeds and after the payment of the $500 to the plaintiffs. In view of the evidence in the record the finding of the District Court respecting the agreement of the parties (supra page 2) must be accepted as correct. Furthermore, in the absence of a definite agreement that the transfer of title was conditioned upon the performance of the formalities in question, there would be no legal basis for plaintiffs' rescission of the contract since defendant's failure to perform the formalities, did not result in any actual injury to the plaintiffs, and, on the facts, could not result in any legal injury. The note was overdue and subject to defense of payment even in the hands of a holder in due course, and the records of Hamilton County, Illinois, disclosed that the Insurance Company had become the owner and title holder of the property of which it was the mortgagee. The plaintiffs had no property interest which could be adversely affected by the Insurance Company's failure to release the mortgage of record, and it is clear that the defendant could not assert any personal claim against the plaintiffs in respect to the property or the mortgage indebtedness.

Plaintiffs also urge that the plaintiff-trustees were without power under the testamentary trust to sell and convey the land to the defendant. It is doubtful whether this question is properly before us. But resolving this doubt in favor of the plaintiffs, we are of the opinion that the language of the testamentary trust covers the transaction in question. The testamentary trust contains the following authorization: "I also authorize, empower and direct my Trustees to sell any or all of the real estate of which I may die seized, if in their discretion it is necessary so to do, at such time and for such a consideration as in their judgment they may deem it for the best interests of my estate."

The findings of the District Court, which are sustained by the evidence, leave no doubt that the trustees, in the exercise of a sound discretion, decided that it was necessary to sell the land, and it is equally clear that they honestly believed it was for the best interest of the estate to sell it for the consideration which was given by defendant. The decision of the trustees, in view of the then existing circumstances, unquestionably was reasonable and was authorized by the language of the trust.

We conclude that the District Court's finding of facts is sustained by the evidence and required the conclusions of law stated thereon.

Judgment of the District Court is affirmed.