CHARLES AULGER

*v.*

HENRY CLAY *et al.*

*Filed at Springfield March 26, 1884.*

1. TENDER—*must be kept good, in order to stop interest, and avoid costs.* A tender of the amount due from the purchaser of land to his vendor, who is not in a position to make a clear title, according to his bond, by reason of an incumbrance placed by him on the premises sold, to be availing to stop the accruing of interest after such tender, must be kept good. To have that effect the tender must be kept in money, at all times ready to be paid, and subject to the order of the creditor at any time when he shall comply with his contract so as to be authorized to receive it.

Brief for the Appellant.

2. The money tendered must at all times be kept in readiness for the creditor, and not be used by the debtor, and when pleaded at law it must be brought into court for the creditor. It may be the precise pieces of money need not be kept separate, but the amount must be kept at all times subject to be received by the creditor when he calls for it. It is in this way only that the debtor can escape the payment of interest and costs.

3. ERROR—*by whom to be availed of—on decree for specific performance not properly apportioning among different claimants.* On bill by the widow and heirs of a deceased purchaser of land, against the vendor, to enforce the specific performance of a contract for the sale and conveyance by the vendor to the vendee, the court decreed that the title in fee should be conveyed to the widow and the heirs. While this was held error, the widow being entitled to no more than dower and a homestead interest in the land, it was further *held,* that it was one that the vendor could not take advantage of, he having no interest or concern in the adjustment of the respective rights of the widow and the heirs.

APPEAL from the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding.

Messrs. PUTERBAUGH & PUTERBAUGH, for the appellant:

A tender, to be availing, must be unconditional. 7 Wait's Actions and Defences, 588.

To avoid the payment of interest after a tender, the money must be kept ready at all times for the creditor. *Thayer* v. *Meeker,* 86 Ill. 474; *Butterfield* v. *Kinzie,* 1 Scam. 445; *Walcott* v. *Van Zantvoord,* 17 Johns. 278; *Cadwell* v. *Cassidy,* 8 Cow. 271; *Wood* v. *Merchants' Savings, Loan and Trust Co.* 41 Ill. 267; *Crain et al.* v. *McGoon,* 86 id. 431; *Stow* v. *Russell,* 36 id. 19; *Doyle* v. *Teas,* 4 Scam. 202; *De Wolf* v. *Long,* 2 Gilm. 679; *Wright* v. *McKeely,* 11 Ill. 241.

A tender is *stricti juris.* The money must be in sight, capable of immediate delivery. The tender must be absolute. 2 Greenleaf on Evidence, secs. 601, 602, 605; 3 Starkie on Evidence, 1067; *Wyncoop* v. *Cowing,* 21 Ill. 570; *Buchanan* v. *Harney,* 12 id. 336.

Mr. W. L. PRETTYMAN, for the appellees:

The tender was full and complete, both at law and in equity. 2 Greenleaf on Evidence, secs. 601, 602, 607; *Webster et al.* v. *French et al.* 11 Ill. 254.

The tender being made, full and complete, on the day the debt became due, and at the place of payment, interest would cease on that day, and would be barred thereafter, unless after the tender the creditor made a legal demand upon the debtor for the money, and the debtor should refuse to pay the debt due. Such was the common law, and is the law to this day. The money due need not be kept intact, but if demand is actually made, must be paid. 2 Greenleaf on Evidence, 608; 7 Wait's Actions and Defences, p. 594, sec. 15; *Crain et al.* v. *McGoon*, 86 Ill. 431; *Town* v. *Trow*, 24 Pick. 169; *Carr* v. *Miner*, 92 Ill. 605; *Allen* v. *Atkinson*, 21 Mich. 357; *Ventres* v. *Cobb et al.* 105 Ill. 35; *Mathison et al.* v. *Wilson*, 87 id. 51; 8 Fisher's Digest, 12,933.

Tender is kept good by offering to pay money in bill. *Board of Supervisors* v. *Heneberry*, 41 Ill. 180.

Offer to pay money is the same as payment. *Blunt* v. *Tomlin et al.* 27 Ill. 100.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This case presents the single question whether there was such a tender as stopped the interest on the note given for a portion of the purchase money for the land. The facts are, that on the 14th day of August, 1868, one Benjamin Whisler, owning the land in controversy, with others, borrowed from the Ætna Life Insurance Company $2500, for which he gave his note and a deed of trust on one hundred and ninety-three acres of the land. The note was payable January 1, 1873, with ten per cent interest, payable semi-annually. Bourland was the trustee to whom the deed of trust was made. On the 26th day of December, 1872, Whisler sold and conveyed

this property to N. Watson, subject to the incumbrance of
the deed of trust.  He, on the 1st day of July, 1873, in like
manner sold and conveyed the premises to appellant, and
he, on the 11th of January, 1877, sold the forty-acre tract
in controversy to one John Clay, now deceased, for $1000.
Clay paid $500 on the purchase, and gave his note for a like
sum, payable the 1st of January, 1878, bearing interest at
the rate of ten per cent per annum, from date.  Aulger gave
him a bond for a deed, on the payment of the note, interest
and accruing taxes.  Aulger bound himself to make to Clay
"a good and sufficient warranty deed of conveyance for said
land unto the said Clay, or his heirs or assigns."  Time was
declared of the essence of the contract.  On the 31st of De-
cember, 1877, Aulger and wife executed a warranty deed for
the land in controversy, and acknowledged it before a proper
officer, conveying the land to Clay.  The insurance company
declined to release this forty acres unless Aulger would pay
to it the $1000 for which it had been sold to Clay, as a pay-
ment on Whisler's note.  Aulger, for the purpose, borrowed
$500, and relied on Clay for payment of the other $500, to
pay the insurance company and to procure its release.  On
the evening before Clay's note matured, it was agreed that
he and Aulger should the next day go to Peoria, make the
payment, and procure the release and close the matter.  On
the 1st of January, the day Clay's note fell due, he, with his
sons and others, went to Aulger's, to tender $550, and to
demand the deed.  They met Aulger on the road.  It is
claimed that Clay then tendered the money.  Witnesses tes-
tify that Aulger promised to return to his house, where Clay
went, and remained about two hours, but Aulger failing to
return, the money was counted, and he left.  Aulger did not
return home until in the evening.  On his return he sent the
deed, by one Wilson, to be tendered to Clay.  Wilson went to
Clay's house, and tendered the deed and demanded the money.
Clay refused to receive it, and pay the money, until Aulger

should procure a release from the insurance company. He told Wilson that when Aulger fixed the title and made him a proper conveyance, the money was ready for him. In the following February or March, Clay went to Aulger's, and stopping at the fence, called Aulger out, and told him he had the money in his pocket to pay him when Aulger should make the deed. Aulger went into his house to get the deed. Clay started to leave, but Aulger called to him to stop, and when he did so, Aulger came up to him and tendered the deed, in the presence of one Stuhn. Clay said he did not have the money with him, but it was at his house. In the latter part of March, 1878, Clay deposited $550 with E. L. Price, telling him he had tendered the money to Aulger; but it was all withdrawn by Clay during the year, and used by him. Nor does it appear he notified Aulger that he had made the deposit of the money claimed to have been tendered. Clay died the 30th of April, 1879, leaving a widow and children, who are the defendants in this case. When Clay purchased he took possession, and he and his family have remained in possession ever since.

The bill, as first filed, was to enjoin the insurance company from selling this forty, under the trust deed, until it had exhausted its remedy against the other lands embraced in the trust deed. The other lands were sold, and satisfied the debt the trust deed was given to secure, leaving the land in controversy free from the lien. Clay, or his family after his death, failed to pay the taxes for two years. The bill was amended, and a specific performance of the contract was sought, and on these facts the court below, on a hearing, granted the relief asked, and decreed that Aulger convey the land in fee to the widow and heirs, requiring them to pay but the $500, with interest until the maturity of the note, and the amount Aulger paid to redeem the land from sale for taxes, with interest. Aulger appeals, and urges a reversal.

It is claimed that Clay made a tender when the note matured, and was thereby released from paying any interest on the balance of the purchase money after the tender was made. We will not stop to discuss the question whether there was a sufficient tender, as, if there was, it was not kept good, so as to stop the accruing of interest. To have that effect the tender must be kept in money, at all times ready to be paid, and subject to the order of the creditor at any time when he shall comply with his contract, so as to be authorized to receive it. This is the general doctrine, and is settled in this court. (*Thayer* v. *Meeker*, 86 Ill. 470; *Crain* v. *McGoon*, id. 431; *Stow* v. *Russell*, 36 id. 18; *Knox* v. *Light*, 12 id. 86.) These cases distinctly announce the rule that the money tendered must at all times be kept in readiness for the creditor, and not used by the debtor, and when pleaded at law, it must be brought into court for the creditor. It is in this way, only, that the debtor can escape the payment of interest and costs. We have only to turn to any book of precedents to find that a plea of tender must aver a readiness, at all times after it is made, to pay the money, and he must bring it into court. If he uses the money, of course he is not at all times ready to pay it.

In the case of *Gyles* v. *Hall*, 2 P. Wms. 378, where a tender was relied on to stop interest, it was said by the Lord Chancellor: "But in this case it ought to appear that the mortgagor, from that time, always kept the money ready, whereas, the contrary thereof being proved, the mortgagor was not ready to pay it, therefore the interest must run on." This is the rule both at law and in equity, and it is supported by the principles of justice.

Appellees refer to several cases as modifying this rule. The case of *Mathison* v. *Wilson*, 87 Ill. 51, holds that the offer to pay the purchase money by the vendee is sufficient to prevent a forfeiture of his contract of purchase, and to entitle him to compel a specific performance. This was held

to confer the right to enforce the contract. To do so, complainant was compelled to show he was ready, willing, and offered to perform, or show an equitable excuse. In that case no question of the stopping of interest by a tender was involved. The case of *Carr* v. *Miner*, 92 Ill. 604, simply holds if a tender was made, the refusal of the debtor afterwards to pay when the money was demanded, proved the tender was not kept good. The case of *Ventres* v. *Cobb*, 105 Ill. 33, only holds that complainant was ready and offered to redeem before the property was put up for sale. The question involved in this case was not there presented, but it was held to preserve the right of the person making the tender to have the sale set aside, and to redeem from the trust deed. The other cases referred to only hold that the benefit of a contract is not lost when the purchaser offers to perform his part of the agreement, nor on a bill for specific performance is it necessary that a party making a tender should keep it good, and bring the money into court, before he can have relief in equity; but to avoid the payment of interest in such a case, the same strict rules of tender would be applied, on the same principles and for the same reasons as at law.

Where a legal and proper tender of personal property is made, the title vests in the person to whom it is made, and he becomes the owner. Although the identical money tendered does not vest in the creditor, it so far becomes his, if the tender is kept good and is brought into court, that he can not recover any interest, costs or damages if the tender is for the proper amount, and all the requirements of the law were observed in making it,—hence the debtor, by using the money, virtually withdraws his tender, and makes it his own. It may be that the precise pieces of money need not be kept separate, but the amount must be kept at all times subject to be received by the creditor when he calls for it. These rules were not observed in this case, and the tender was not sufficient to arrest the accruing of interest. The court below

therefore erred in not allowing appellant interest on this deferred payment. For that error the decree of the court below must be reversed.

It is urged that the court below erred in decreeing the title in fee should be conveyed to the widow and heirs. This was no doubt error, as the widow could have no more than dower and a homestead interest in the land. But of this error appellant can not be heard to complain. He should convey the land, and when he does so under the decree of the court, he has no concern or interest in the question as to who gets the title. This error will be corrected on another trial, unless further evidence should be introduced requiring the same decree on that question.

The decree of the court below is reversed, and the cause remanded.

*Decree reversed.*