**Sarah J. Thompson, Appellee, v. Jacob L. Crains et al., Appellants.**

**Gen. No. 24,612.**

1. TAXATION, § 188*—*construction of word "year."* In view, Hurd's Rev. St. ch. 131, sec. 1 (J. & A. ¶ 11102), defining the word "year," that term, as used in section 8 of the Revenue Act of 1898 (J. & A. ¶ 9523), is to be construed as meaning a calendar year.

2. VENDOR AND PURCHASER, § 168*—*how taxes agreed to be prorated will be divided.* Where it is agreed between a vendor and purchaser that the taxes shall be prorated, the vendor is chargeable with the taxes from January 1 until the date of the sale and the purchaser with those accruing from the latter date.

3. DEEDS, § 196*—*right to show assumption of incumbrance was part of consideration.* The fact that the warranty deed by which property was conveyed contains no condition that the conveyance is subject to the assumption of an incumbrance, and makes no reference to any incumbrance on the property, does not prevent the introduction of evidence to show that the assumption was a part of the consideration for the transfer.

4. DEEDS, § 196*—*right to introduce evidence showing real consideration.* It is always proper to introduce evidence showing the real consideration for a transfer of property.

5. TENDER, § 4*—*when tender in form of certified check is not insufficient.* A tender in the form of a certified check is not rendered

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

insufficient by reason of the fact that it recited that it was in payment of all amounts due to that date, where the court finds, on a suit to enforce the demand, that the amount so tendered was the amount due.

6. MORTGAGES—*when tender sufficiently shown to stop accruing of interest.* On a suit to foreclose a mortgage, where it appears that the proper amount was tendered before the first suit involving the same mortgage was filed; that tender was again made in the plea filed therein; that on the hearing the money was again tendered in open court, but in each instance the tender was refused; that after the dismissal of that suit the proper tender was again made but refused and thereupon defendant stated the money was ready at any time complainant should change her mind, and the only evidence regarding defendant's not continuing to keep the tender in readiness was that, after complainant had refused the certified check tendered, defendant had cashed it, it was held that the tender and that it was held by defendant subject to complainant's call were sufficiently shown to stop the accruing of interest.

7. EVIDENCE, § 34*—*presumption of continuance of condition.* It is a rule of law that where a condition is once shown to exist, it continues until the contrary is shown.

Appeal from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Reversed and remanded with directions. Opinion filed December 31, 1919.

JACOB LEVY and JOSIAH BURNHAM, for appellants.

ALFRED W. BAYS, for appellee.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

By this appeal defendants seek to reverse a decree in a suit filed to foreclose a mortgage. Complainant has assigned cross errors.

The record discloses that on August 24, 1914, complainant, Sarah J. Thompson, and her husband conveyed the premises in question by warranty deed to the defendant, Jacob L. Crains. There was no mention in the deed of any incumbrance on the property except certain taxes and assessments. The consideration

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

recited in the deed was $10. From the evidence, however, it appeared that the consideration was $19,000, $5,000 of which was paid in cash, the assumption of an incumbrance of $10,000 and a purchase money mortgage for $4,000. The $4,000 was evidenced by four principal notes of $1,000 each, due 6, 12, 18 and 24 months after date with interest at 6 per cent per annum until due and 7 per cent after maturity. The several instalments of interest were evidenced by interest notes or coupons. When the property was transferred it was agreed that the taxes should be prorated. And since the amount of the taxes could not then be ascertained, the defendant, Crains, was to pay them in the spring of 1915 and the matter was then to be adjusted. February 24, 1915, when the first note for $1,000 and four interest coupons aggregating $120 came due, the defendant paid the principal note, and at that time the amount of the taxes was as yet unascertainable, and it was agreed that these interest notes be held in abeyance until the taxes were paid. Afterwards, in accordance with this understanding, defendant paid the taxes amounting to $226.93, and then took up with complainant the matter of prorating them. The defendant took the position that he was entitled to be credited with that portion of the taxes from January 1, 1914, until the date of the sale, August 24, 1914. On the other hand, the complainant's contention was that credit should only be given for that portion of the taxes from April 1, 1914, until the date of the sale. They being unable to agree, nothing further was done until August 24, 1915, when another note for $1,000 and three interest coupons came due. The defendant then tendered the amount less the deduction which he claimed should be allowed him for the proportionate share of the taxes. The tender was made in the form of a certified check and bore an indorsement to the effect that it was in full of all amounts due up to and including August 24, 1915. Complain-

ant refused to accept the check and on August 27, 1915, returned it with a letter, stating, "It is our intention to foreclose on this mortgage as soon as the papers can be printed." A few days thereafter a bill to foreclose the mortgage was filed. It was alleged that on account of the default complainant had elected to declare the entire indebtedness due in accordance with the terms of the trust deed. To this bill defendant filed a plea setting up the tender, and that defendant was still ready, able and willing to pay, and offering to pay the amount which should be found due by the court. The plea after argument was held good, a replication was filed and the matter went to hearing before the chancellor. After evidence had been introduced, complainant apparently seeing the case was going against him, on October 17, 1916, the following order was entered: "On motion of solicitor for complainant it is ordered that said suit be dismissed at complainant's motion and at complainant's costs." Prior to this dismissal defendant again tendered in open court the amount due which was again refused. In the meantime the entire indebtedness had by its terms become due, and 10 days after the dismissal of the foreclosure suit, viz., October 27, 1916, the defendant tendered complainant $3,225, which was refused, and immediately thereafter on the same day tendered complainant $3,275, which was likewise refused. The only reason for the refusal of the several tenders made was that defendant was deducting too much on account of the prorating of the taxes, and it is conceded that if the defendant's method of prorating the taxes, viz., from January 1, 1914, to August 24, 1914, is the correct method, then the tender made August 24, 1915, was sufficient, and if it stopped the accruing of interest after that date on the amount tendered, then the tender made October 27, 1916, was sufficient to cover the indebtedness due.

The tender of October 27, 1916, having been refused,

complainant on November 23, following, filed the present bill. Defendant answered denying any default and setting up the several tenders of payment. Afterwards he set up that complainant had warranted the premises to be free and clear of incumbrance when, as a matter of fact, there was an incumbrance on the date of the transfer of $10,000, which defendant was obliged to pay and that this was largely in excess of complainant's demand and, therefore, complainant should not be permitted to foreclose until the incumbrance of $10,000 had been paid off by complainant. The answer further set up the prior bill and the dismissal thereof after hearing, claiming that this dismissal was *res adjudicata.* The case was referred to a master who found that the taxes should be prorated as contended for by defendant; that the tender made August 24, 1915, was the correct amount; that all the tenders made were sufficient; and, that the dismissal of the first suit was *res judicata.* Objections were filed by both sides which were overruled and they were afterwards ordered to stand as exceptions, some of which were sustained and some overruled by the chancellor who held that defendant's contention of the method of prorating the taxes was correct; that the tender made August 24, 1915, was the correct amount. But that this tender had not been kept good and, therefore, this amount being overdue from that time drew interest at the rate of 7 per cent; that when the tender was made October 27, 1916, it was insufficient in amount for the reason that it did not include this interest. No solicitor's fees were allowed complainant and it was ordered that in default of payment the property be sold.

Complainant contends that the decree is wrong in allowing the defendant credit for that portion of the taxes for the year 1914 from January 1 to August 24, the date of the sale, claiming that defendant was entitled only to that portion from April 1, 1914, until the date of the sale. In support of this it is said that

section 8 of the Revenue Act of 1898 (J. & A. ¶ 9523) provides that the owner of property on the 1st day of April in any year shall be liable for the taxes for that year, and that the tax year, therefore, should begin on April 1 and end on March 31, the following year.  Section 8 of the Revenue Act of 1898 provides that property shall be listed and assessed with reference to ownership, amount, kind and value "on the first day of April in the year for which the property is required to be listed.  * * *  The owner of property on the first day of April in any year shall be liable for the taxes of that year."  Section 1, ch. 131, Rev. St. ( J. & A. ¶ 11102) provides that in the construction of all statutes the following rule shall be observed unless repugnant to the context of the statute:  "*Tenth*.  The word 'month' shall mean a calendar month, and the word 'year' a calendar year, unless otherwise expressed."  From this we think it clear that the word "year" as used in the Revenue Act quoted means a calendar year.  Taxes are always spoken of as, for instance, for the year 1914.  If the complainant's contention was correct, viz., that the year began on the 1st of April and terminated on the 31st of the following March, the taxes for that period could not properly be designated for the year 1914, but should be designated taxes for 1914 and 1915.  The method adopted by the chancellor for prorating the taxes is correct.

Since the only effect of our holding that the dismissal of the first foreclosure suit was *res adjudicata* of the amount due August 24, 1915, and since there was no dispute in this regard except as to the matter of taxes, and since we hold that defendant's contention in this regard was correct, it becomes unnecessary to pass on the effect of the dismissal of the first suit.

Defendant insists that it was error to admit evidence tending to show that he purchased the property subject to an incumbrance of $10,000, when there was no such condition in the warranty deed, and since the

deed made no reference to any incumbrance, complainant should have been required to remove this incumbrance before she could foreclose the mortgage. There was no question but that this incumbrance was on the property at the time of the purchase and that it was part of the consideration. It is always proper to introduce evidence showing what the real consideration for the transfer was.

We having held with the defendant in the matter of payment of taxes, there is no dispute but that the amount of the two tenders was sufficient, and if kept good would defeat the complainant, except complainant argues that the first tender was insufficient in that the indorsement on the certified check required complainant to execute a full release in order to collect on the check. The only condition recited on the check was that it was in payment of all amounts due to that date, and there being no dispute in this regard, the condition did not affect the tender. It was sufficient. Complainant, however, contends that the tender was not kept good for the reason, as she puts it, that the check of August 23, 1915, was cashed by defendant and that "there is absolutely no attempt on the part of appellants to show what disposition was made of the funds of either of the tenders after the same were made," and that a tender to stop the accruing of interest must be kept good. Counsel's position seems to be that where a tender is made and is sufficient in all respects and has been refused without cause, yet when suit is brought to enforce this same demand the burden of proof is on the defendant not only to show the tender, but that it was kept good and that the money was always held by defendant subject to the call of complainant.

In support of this, complainant cites *Crain v. McGoon*, 86 Ill. 431; *Aulger v. Clay*, 109 Ill. 487; *Rankin v. Rankin*, 216 Ill. 132, and *Healy v. Protection Mut. Fire Ins. Co.*, 213 Ill. 99. We have examined all of these authorities and a great many others not cited

by either side, and have given careful consideration to the question. But we have found no case that goes to the extent contended for by complainant, nor do we think this contention is based on sound reason or straight thinking. Neither is it in accord with the plainest principles of fair dealing and justice, when it is considered that the tender of August 24, 1915, was in all respects sufficient to meet every requirement of the law and was without justification refused. The notes then coming due drew interest until maturity at the rate of 6 per cent and after maturity at 7 per cent, and after complainant wrongfully refused to accept this tender, she is permitted by the decree to take advantage of her own wrong and compel the defendant to pay 7 per cent after that date. This most certainly is not according to equity and fair dealing. Moreover, in addition to the tender of this amount, the plea afterwards filed again offered to pay whatever amount was due at any time, and several months afterwards during the hearing on the plea the money was again tendered in open court. Later after the dismissal of that suit, defendant again made tender of all that was due, but again without any justification acceptance was refused. And then the evidence shows, defendant and his counsel stated that the money was at the disposal of the complainant at any time should she change her mind. This whole litigation was brought about by the wrongful act of the complainant in the wrongful claim about the division of the taxes, and this wrongful act is persisted in even after the trial judge had held the plea setting up the division of taxes as contended for by defendant was correct and the tender sufficient, and there is no dispute but that the plea could be proved. This attitude of complainant was further persisted in when the tender was made in October, 1916, and afterwards on the trial of this case and is still persisted in in this court. It would be a travesty on justice to maintain that there was a default in payment after the tender of August, 1915, and that from that

date complainant was entitled to 7 per cent interest on account of that default, and to saddle the cost of this proceeding upon the defendant on the mere pretext that defendant did not affirmatively show that during all the time after the various tenders the money was always kept subject to the order of the complainant. Especially is this true because the complainant in this case was in all these matters represented by counsel and on the trial counsel testified, that when the question first came up about the division of the taxes there was a difference of opinion as to whether the taxes should be prorated as of January 1 or April 1, and that ''I was not dead sure myself.''

In the *Crain* case, the indebtedness was due December 10, 1856. Some payments of interest had been made and on March 1, 1863, payment was tendered in greenbacks but refused. Afterwards the person making the tender spent the money for other purposes. Later the owner of the indebtedness changed his mind and called for the money due but was told that he could not be paid as the matter must go through the Probate Court. The court said the tender should have been in gold and that under the common law if the tender was made on the date and at the time and place stipulated and not accepted, the land was freed from the lien; that if it was not paid at the time it was due, the land was forfeited and, under these circumstances where the tender was made after it was due, it would be very harsh to hold that the creditor who was not in a position to figure out the exact amount due must lose his lien on the property or accept the tender.

In the *Aulger* case, tender was made and refused, and afterwards the creditor demanded the money which the debtor then refused to pay until the title could be cleared. Afterwards the money was used by the debtor.

In the *Rankin* case, it was held that where the creditor had received the use of the land in con-

troversy and the purchase price is not tendered into court, he should pay interest thereon on decreeing him the right to purchase the land.

In the *Healy* case, tender was made after the suit was brought, and it was held that a sufficient amount had not been tendered. We think it clear that none of these cases sustain complainant's contention. *Bensley v. Bartholf*, 137 Ill. App. 420, was a proceeding to foreclose a mortgage. Prior to the suit the debtor tendered the amount due, which was refused. It was held that the decree awarding foreclosure was wrong and that the suit would not lie. The court there said (p. 427) : "In our opinion, appellant did all that she was required to do under the law in the matter of the payment of interest. *Gorham v. Farson,* 119 Ill. 442; *Ventres v. Cobb,* 105 Ill. 42; *Webster v. French,* 11 Ill. 278. She could do nothing more than tender the interest due. This she did, and having made the tender, she was required to do nothing more until a court of equity should order it brought into court. *Webster v. French.* Appellee had no right, under the evidence, to declare a default and the whole indebtedness due and file this bill to foreclose. He has no standing in equity upon the record before us."

The *Webster* case, was a bill filed to enforce a conveyance of the Quincy House, a hotel located in the City of Quincy, which had been sold at auction. Tender was made of the amount of the bid but the conveyance was refused on the ground that there was a higher bid. It was objected that the bill would not lie because the money had not been tendered in court. The court there by Mr. Justice Caton discusses various authorities on that point and said (p. 278) : "The result of my examination of this subject clearly shows that the court of Chancery is not bound down by any fixed rule on this subject, by which it will allow the substantial ends of justice to be perverted or defeated by the omission of an unimportant or useless act, which nothing but the merest technicality could require. The

money may, at any time, be ordered to be brought into court, whenever the rights of the opposite party may require it; but while he is insisting that the money is not his, and that he is not bound to accept it, it would seem to be a matter of no great consequence to him whether the money is in the custody of the court or not. The court possesses a liberal and enlarged discretion on this subject, by the proper exercise of which the rights of all parties may be protected." In that case the court quoted from *Washburn v. Dewey*, 17 Vt. 92. There the defendant objected that "though the oratrix tendered the money properly before the time specified, yet the tender was not kept and brought into court when the bill was entered." The court said: "The excuses for not performing this contract are, if not frivolous, at least very unsatisfactory. The oratrix, having tendered to the defendant the money for the payment of the note, had nothing further to do until the defendant manifested his willingness to comply with his obligation, and demanded the money. There is no pretense, therefore, for saying the 'tender was not kept good.' "

*Rohn v. Heidrich*, 174 Ill. App. 423, was a bill to foreclose a mortgage. Before the bill was filed, tender of the amount due was made but was refused on the ground that the bill to foreclose had been prepared and $50 additional was demanded for solicitor's fees. The master to whom the cause was referred found that the tender "was sufficient and stopped the running of interest" but no solicitor's fees should be allowed. The chancellor did not sustain this position but awarded the solicitor $100. The court after stating that the only question to be determined was the sufficiency of the tender said: "The rules in respect to tender are much more liberal and flexible in equity than at law." It was held that the tender was sufficient.

*Glos v. Ambler*, 218 Ill. 269, was a bill to set aside a tax deed. The amount due to the owner of the tax

Thompson v. Crains, 216 Ill. App. 300.

title was tendered before the suit was started but was refused. Appellee offered to pay the amount found due. It was afterwards paid into court. It was said, p. 274: "This was sufficient to stop interest on the amount, and also to render appellants liable for costs. (*Webster v. French,* 11 Ill. 254; *Board of Sup'rs of Livingston Co. v. Henneberry,* 41 Ill. 179.)"

Under these authorities and considering the fact that the proper amount was tendered in August, 1915, before the first suit was filed, that tender was again made in the plea filed in that case, that on the hearing the money was again tendered in open court but each of these tenders refused, that after the dismissal of that suit the proper tender was again made but refused and thereupon the defendant stated that the money was ready at any time should the complainant change her mind, we think it would be most unjust and inequitable to permit the decree to stand. Moreover, there is no showing in that case that the money tendered was afterwards spent by the defendant. The only evidence in this regard is that after the refusal of the certified check the defendant cashed it. This would tend to indicate that the defendant had the money rather than that he had spent it. It is a rule of law that where a condition is once shown to exist, it continues until the contrary is shown. In the instant case, the evidence shows the defendant had the money, and nothing to the contrary appearing, it should be presumed that he continued to have it. The complainant's position throughout this case was wrong, and she should not be permitted in a court of equity to take advantage of her own wrong to work an injustice on the defendant.

The decree of the Superior Court of Cook county is reversed and remanded with directions to dismiss the bill for want of equity at complainant's costs.

*Reversed and remanded with directions.*