Board of Trustees of Township 16, Range 14, in Douglas County, Appellant, v. Indemnity Insurance Company of North America and Albert S. Hawkins, Appellees.

Gen. No. 8,870.

Heard in this court at the October term, 1934. Opinion filed April 12, 1935.

DOBBINS & DOBBINS, of Champaign, for appellant.

COTTON & NICHOLS, of Tuscola, and C. H. SWICK, of Urbana, for appellees.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

This was an action of debt brought by the appellant against the appellees upon the bond of a school treasurer. The declaration filed on September 28, A. D. 1933, averred two breaches against appellee Albert S. Hawkins, a former school treasurer of Township 16, Range 14 of Douglas county, and appellee Indemnity Insurance Co., of North America as surety on the bond of Hawkins. The declaration averred the election of Hawkins as treasurer, the giving and approval of his bond, his removal as treasurer by the board of trustees on June 19, A. D. 1933 and the appointment and qualification of his successor.

The first breach averred that on June 25, A. D. 1933, Hawkins failed and refused to turn over to his successor in office $5,000 of funds which had been placed in his hands and belonging to the schools of said district.

The second breach averred that on March 25, A. D. 1933, Hawkins loaned $5,000 of the township school funds to one Scott Burgett without said loan being secured by a real estate mortgage in manner and form as provided by law. It also averred the removal of Hawkins, the appointment and qualification of his successor, the demand for the said $5,000 and Hawkins' failure to deliver the same.

The two appellees filed separate pleas which were identical in form. The first plea was that appellees did not owe the money, the second plea was *non damnificatus,* the third performance, the fourth denying the second breach, the fifth denying that demand had been made upon Hawkins, the sixth denying that a successor had been appointed, the seventh denying that Hawkins had any monies in his hands belonging to the trustees at the time of the commencement of this suit and the eighth averring that the Newman National Bank had been designated as depository of school

funds by the board of trustees, and that there was in said bank all of the funds belonging to said board of trustees.

An additional plea averred the designation of the same bank as depository along with the First State Bank of Newman and that there was a balance of $23,763.47 on deposit in the said Newman National Bank which constituted all of the funds belonging to the board of trustees; that the said bank was closed on March 6, A. D. 1933 by the proclamation of the president and is now closed and in receivership and that the appellee Hawkins is ready to tender and bring into court an assignment of that account and pay the same to the appellant. To the first seven pleas the appellant filed *similiters*. To the eighth plea the appellant filed a replication denying that all the funds of said school treasurer were in the said Newman National Bank at the time of the default of Hawkins. As to the additional plea appellant filed a replication denying that appellees had tendered the sum of $23,763.47 and averred that the appellant was willing and ready to accept such tender but denied that it was bound to accept any assignment of an account placed to Hawkins' credit in the closed bank after the default of the treasurer and after suit was brought.

By agreement of parties a jury was waived and the cause tried before the court. After the testimony was concluded the court found the issues in favor of the appellees and against the appellant for costs of suit and judgment was entered upon such finding, from which judgment appellants have prosecuted this appeal.

The evidence disclosed that the appellee Hawkins had his office in the rear of the First National Bank of Newman. He had on deposit in this bank early in the year of 1933 the sum of $23,763.47. Hawkins also kept the books of supervisor J. M. Cooley who was treas-

urer of the road and bridge fund of the town of Newman. Cooley had loaned the sum of $5,000 from the road and bridge fund to one Scott Burgett and because of that fact, when he prepared to make his report about the last of March, 1933, his account was short to that extent and Burgett could not repay the money. Cooley's report was due to the board of town auditors about that time and it was necessary for him to have the same approved and published before the annual town meeting. He and Burgett went to Hawkins and arranged to borrow $5,000 from the school fund so that Cooley's account would be straight. The school treasurer did not have to make a report until the first of the following July.

The bank had been closed by the order of the president on March 6, A. D. 1933. Hawkins had deposited the funds in the bank in the name of "A. S. Hawkins, Treas. 16-14." Cooley's account in the bank as supervisor was deposited as "J. M. Cooley, Treas. R. & B."

In order to secure Hawkins, Cooley and Burgett gave him a note for the sum of $5,000 signed by them jointly and turned over two other notes as collateral security therefor. On the back of the note was indorsed, "It is understood that this note is the obligation of Scott Burgett and is to be paid by him." Thereupon Hawkins gave to Cooley a check dated March 25, A. D. 1933, drawn on the Newman National Bank payable to "J. M. Cooley, Treas. R. & B. $5000.00" and signed "A. S. Hawkins, Treas. 16-14." Cooley indorsed the check and placed the same in the bank for credit upon his account as treasurer of the road and bridge fund. Hawkins then prepared for Cooley his annual report to the board of town auditors and filed it with himself as town clerk, which office he also held. In order to have Cooley's report disclose no shortage it was necessary that Cooley be credited with the $5,000 check given him by Hawkins. This check was

treated by Hawkins as a transfer of $5,000 of his funds in the bank to the Cooley account and accepted by the latter and acted upon by him in making up his supervisor's report.

On March 27, A. D. 1933, two days after the check was given, a conservator was appointed for the Newman National Bank. The conservator took charge on March 28th, and finding the Hawkins check in the files, credited Cooley with the $5,000 and charged Hawkins' passbook with that amount. Cooley's passbook was presented to the town auditors and his report approved and published.

Along about the middle of June, the board of school trustees met in Hawkins' office and the latter was asked about his account. He told the board that he was short and that he had loaned the $5,000 to Scott Burgett; that he had taken Burgett's note for the said sum which was secured by two notes for $2,500 each. He told the board that he had given the $5,000 check to Burgett so that the latter could repay that amount for money he had borrowed from Cooley as supervisor so that Cooley could balance his account before making his annual report. He admitted that he did not have the right to make the loan and that he could not pay the same; that he was secured by a surety bond and would notify the company that his account was short. He was removed from office as school treasurer and E. O. Swickard was appointed as his successor. Swickard demanded the monies and accounts of the school treasurer and Hawkins turned over his passbook showing a balance which was about $5,000 short. Hawkins advised the new treasurer that he was unable to pay this amount and that they would have to look to his bondsmen for payment.

Two months after the suit was instituted, in September, a receiver was appointed for the bank. Thereafter the receiver without any notice to the school

treasurer changed the accounts in the bank by charging the account of Cooley with $5,000 and crediting the account of "A. S. Hawkins, Treas. 16-14" with the same amount. No checks were drawn by anybody to make this change.

It is the contention of the appellant that the appellee Hawkins as treasurer made the loan to Burgett from his account in violation of law and for the purpose of aiding Cooley in squaring the supervisor account; that as town clerk and *ex officio* member of the town auditors he knew of the circumstances whereby the supervisor account had been balanced, accepted and approved and that because of his knowledge of the entire transaction he was estopped to deny the validity of the transfer of the funds from his account as treasurer so that the loss could later be thrown upon the road and bridge fund.

The appellees assert that the check in question from Hawkins to Burgett was a complete nullity since it was given on a closed bank, which was never reopened, and that the conservator had no power or authority to cash the $5,000 check in question or to transfer the proceeds thereof from one account to another after the suspension of the bank and that the rights of the parties should be fixed as of the official date as of the closing of the bank on March 6, 1933.

It is apparent from the undisputed testimony that Hawkins and Cooley manipulated the school funds so that the board of town auditors would approve the supervisor's report showing a balanced account and get Cooley's successor to accept an order on the bank for the funds. Aided by Burgett, they induced the conservator to transfer the $5,000 fund from the school treasurer to Cooley as treasurer of the road and bridge fund. Hawkins well knew at the time he made this arrangement and checked out the funds that he had no authority to loan the funds out of the district except

as provided by law. Callaghan's Rev. St. ch. 122, ¶ 72. The making of the loan without sufficient security and in violation of law rendered the treasurer and his bondsmen liable. It is our judgment that Hawkins was in default; that his manipulations secured the approval of the supervisor's annual report and that he is now barred from claiming that the conservator had' no power to make the transfer of accounts made at his special instance and request. Neither do we feel that the action of the receiver acting under advice from the comptroller of currency could correct or change these accounts.

It is further contended by the appellee that the action of the receiver in holding that the conservator had no right to charge the Hawkins check to his account as school treasurer and to credit the account of Cooley as treasurer of the road and bridge fund was proper and wholly justifiable and that such action replaced the bank deposits in the same condition that they were at the time the bank was closed on March 6, A. D. 1933; that thereby the tender of the assignment of the account gave to the appellants the same rights they would have had if the Hawkins check had never been given. It is a well established principle of law in the State of Illinois that a tender to be effective must be made in money at all times ready to be paid and kept in readiness for a creditor and when pleaded at law must be brought into court for the creditors. It is this way only that the debtor can escape the payment of interest and costs. *Aulger v. Clay*, 109 Ill. 487. It is therefore our judgment that the tender of an assignment of an account in the closed bank, which was certain to bring litigation and difficulties to the assignee instead of cash for the amount in controversy, was not a sufficient tender at law.

Because of the views herein expressed, we believe that the trial court erred in finding for the appellees and in not rendering judgment in favor of the ap-

pellant for the amount due from Hawkins as school treasurer in order to balance his account which was short the sum of $5,000 represented by the check dated March 25, 1933, and interest at five per cent from that date. The judgment of the circuit court of Douglas county is therefore reversed and the cause remanded.

*Reversed and remanded.*